UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
SOUTHERN DIVISION
PIKEVILLE

| | | |
|---|---|---|
| DONNIE ALLEN, II, | ) | |
| | ) | |
| Plaintiff, | ) | Civil Action No. 08-135 |
| | ) | |
| v. | ) | |
| | ) | **MEMORANDUM OPINION** |
| JIM BOOTH, et al., | ) | **AND ORDER** |
| | ) | |
| Defendants. | ) | |
| | ) | |

*** *** *** ***

Defendant Jim Booth ("Booth") filed a motion to dismiss or, in the alternative, for summary judgment, R. 19. Booth provided evidence that he was not involved in the alleged violations of the plaintiff's constitutional rights. Since the plaintiff, Donnie Allen, provided no evidence in response, *see* R. 20, to show how Booth violated his constitutional rights, Booth's motion for summary judgment must be granted.

## BACKGROUND

While there is no question that the facts alleged in the complaint are troubling, they simply do not implicate Booth in a way that would subject him to liability. For the purposes of this opinion, the Court accepts the complaint's facts at face value. In addition, Allen provides no evidence to contest the facts stated in Booth's affidavit, *see* R. 19, Ex. 1, Booth Aff. Therefore, those facts will be presumed to be uncontested.

In July 2007, Booth was a commander of the Kentucky State Police ("KSP") Post No. 9, in Pikeville, Kentucky, where Jared Alfrey was a police trooper. R. 1 at 2. Alfrey did not report

directly to Booth.  R. 19, Ex. 1, Booth Aff. at 1.  Rather, a sergeant and lieutenant were between Alfrey and Booth in the chain of command, and Booth did not have day-to-day contact with Alfrey.  *Id.*

On or around July 1, 2007, Allen was at the residence of his ex-girlfriend, Dreama Kazee. R. 1 at 2.  KSP was called and asked to remove Allen.  *Id.*  Alfrey arrived at Kazee's residence and arrested Allen for being under the influence of alcohol.  *Id.*  Alfrey handcuffed Allen and placed him in the backseat of his KSP cruiser.  *Id.*  Alfrey first drove to Appalachian Regional Hospital to resolve a separate issue and left Allen in the car.  *Id.*

While Alfrey was in the hospital, Allen kicked out the rear window and escaped from the car.  *Id.* at 3.  Alfrey returned to the car, saw that Allen had escaped, and began searching for him. *Id.*  Alfrey found Allen hiding around a flood wall to the rear of the hospital.  *Id.*  Allen attempted to flee but Alfrey tackled him.  *Id.*  While Allen was on the ground, Alfrey allegedly kicked him about ten times in the stomach and struck him about eight times in the back with a hard object. *Id.*  Then, Alfrey pulled Allen to his feet and took him back to the KSP cruiser.  *Id.*  Two other officers–not Booth–followed Alfrey and Allen as they left the hospital.  *Id.*

Alfrey took Allen to a secluded location on top of a hill and ordered him out of the cruiser. *Id.*  Allen asked why he had been taken to this location but Alfrey simply repeated his order to exit the police cruiser.  *Id.* at 4.  Allen eventually complied and got out of the cruiser.  *Id.*  His handcuffs were removed and then Alfrey allegedly slammed him face-forward onto the cruiser's trunk.  *Id.*  Allen fell to the ground because of this initial blow.  *Id.*  With the two other officers looking on, Alfrey allegedly began hitting Allen's back, stomach, and face.  *Id.*  Eventually,

Alfrey lifted Allen to his feet and put him back in the car. *Id.*

Alfrey next drove Allen to the Pike County Regional Jail. *Id.* Allen was charged with alcoholic intoxication, resisting arrest, and fleeing and evading police. *Id.* At the jail, Allen received no medical treatment due to any injuries from the alleged assault. *Id.* Further, Alfrey did not report using force against Allen to his squad sergeant, which would have initiated an investigation. R. 19, Ex. 1, Booth Aff. at 2. Thereafter, all the charges against Allen were dropped. R. 1 at 4.

The parties dispute whether Allen was injured during his arrest. In his complaint, Allen alleged that, as a result of Alfrey's assault, Allen suffered numerous injuries. *Id.* at 5. On the other hand, in his affidavit, Booth claimed that the police were not aware of any injuries to Allen. R. 19, Ex. 1, Booth Aff. at 2. In addition, he stated a detention center will not accept a suspect if he has injuries requiring treatment until he is medically cleared. *Id.* at 2-3. There is no evidence that Trooper Alfrey had to get medical clearance for Allen. *Id.* at 3.

Following the arrest, Allen's mother called KSP to complain of the force that Trooper Alfrey used. R. 1 at 5; R. 19, Ex. 1, Booth Aff. at 2. Allen's mother lived in North Carolina but had heard of Allen's alleged injuries after she spoke with Allen on the phone. R. 19, Ex. 1, Booth Aff. at 2. Lieutenant Bobby Johnson—not Booth—spoke with Allen's mother and advised her that Allen must raise the complaint because Allen was an adult and Allen's mother had not observed the alleged injuries first hand. *Id.* at 3. Allen made no complaint to the police about Alfrey's alleged use of improper force and, hence, no investigation was started. *Id.* Booth knew that Allen's mother had contacted KSP. *Id.* at 2.

On June 30, 2008, Allen brought a civil action against Booth and Alfrey in both their individual and official capacities for the July 1, 2007, arrest, alleged assault, and subsequent detainment. *See* R. 1. He alleged in a 42 U.S.C. § 1983 action that Booth and Alfrey violated the Fourth, Fifth, and Fourteenth Amendments. *See id.* Specifically, the complaint alleged that Booth: deprived Allen of his liberty without due process of law; deprived him of equal protection of the laws; failed to prevent Alfrey from unlawfully harassing, arresting and using excessive force against Allen; and unlawfully detained him. On November 5, 2008, the Court dismissed the official capacity claims. *See* R. 13. Booth has now moved to dismiss the individual capacity claims.

## DISCUSSION

Booth argues that qualified immunity bars the individual-capacity claims asserted against him. When confronted with a claim of qualified immunity, a court must decide whether (1) the facts that a plaintiff has alleged or shown make out a violation of a constitutional right and (2) the right at issue was "clearly established" at the time of defendant's alleged misconduct. *Pearson v. Callahan*, 129 S.Ct. 808, 815-16 (2009) (citing *Saucier v. Katz*, 533 U.S. 194, 201 (2001)). In the instant case, Allen has not shown that Booth violated any of his constitutional rights.

In order for Allen to establish liability on Booth's part, he must show that Booth engaged in "active unconstitutional behavior, and . . . a mere failure to act [is] not sufficient." *Doe ex rel. Doe v. City of Roseville,* 296 F.3d 431, 440 (6th Cir. 2002) (citation omitted). Booth's affidavit demonstrates he had little to no involvement in the alleged assault, arrest, and detainment of Allen. *See* R. 19, Ex. 1, Booth Aff. Booth had no contact with Alfrey before the arrest of Allen

4

or the alleged use of improper force. *Id.* at 1-2. He was not present for the events. *Id.* at 2. Further, he did not "authorize, direct, condone, encourage, acquiesce in, or have any prior knowledge of the activities of Trooper Alfrey with respect to [the plaintiff Allen]." *Id.* Moreover, Alfrey did not report the use of force, which would have launched an investigation, and Allen did not file a complaint about the arrest. *Id.* at 2-3. Also, the detention center accepted Allen without medical treatment, putting into question whether Allen had any injuries. *Id.* The center generally does not accept a person unless he is medically cleared. *Id.* Finally, Booth and the KSP were unaware of any prior complaints that Alfrey had used improper force. *Id.* at 3. All of these facts support concluding that Booth was not engaged in active unconstitutional behavior.

One fact, on its face, might suggest Booth was involved with Allen's detention. Booth knew that Allen's mother called to complain of improper force, *see id.* at 2, thereby putting Booth on notice of Alfrey's alleged actions. However, this fact fails to help Allen. Booth's affidavit is clear that his mother was advised that Allen himself should file a complaint since she was calling from out of state and did not have first hand knowledge of Allen's arrest or alleged injuries. *Id.* at 3. But Allen did not file a complaint, and thus, Booth had no reason to investigate at that point. Further, Booth's knowledge of that one complaint alone does not suggest active unconstitutional behavior. *Doe*, 296 F.3d at 440 (stating that "a mere failure to act was not sufficient" to sustain a supervisory liability claim in the § 1983 context). Something more than Booth's possible knowledge, after Allen was already injured and detained, is required here.

After Booth showed that he had almost no involvement in Allen's arrest, the burden shifted to Allen to present sufficient evidence from which a jury could reasonably find for him.

5

*See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 252 (1986). Allen presents no evidence in his response to meet his burden. This lack of evidence is sufficient grounds to find for Booth. *See* Fed. R. Civ. P. 56(e)(2) (stating that a party opposing a properly supported motion for summary judgment "may not rely merely on allegations or denials in its own pleading . . . [but it must in response by affidavit or otherwise] set out specific facts showing a genuine issue for trial.").

Surprisingly, Allen quotes the standard for supervisory liability in the Eleventh Circuit, which is arguably a more difficult standard to meet than the Sixth Circuit's. *See Doe*, 296 F.3d at 439-40 ("The deprivations that constitute widespread abuse sufficient to notify the supervising official must be obvious, flagrant, rampant, and of continued duration, rather than isolated occurrences." (quoting *Braddy v. Florida Dep't of Labor & Employment Sec.*, 133 F.3d 797, 802 (11th Cir. 1998))). Yet, he provides no evidence of "widespread abuse" by Alfrey to support this argument.

Allen does state, in passing, that Booth knew of at least two occurrences where Alfrey used excessive force. R. 20 at 3. This suggests there were two incidents involving Alfrey before the alleged assault of Allen. While this might create a genuine issue of material fact regarding whether Booth was on notice of Alfrey's propensity for using improper force, Allen cites no evidence to support this claim. If such evidence existed, it should have been obtained or at least inquired about during discovery and filed with the response. Without any evidence, there cannot be a genuine issue of material fact. *See* Fed. R. Civ. P. 56(e)(2).

Ultimately, Allen has failed to meet his burden to present sufficient evidence from which

6

a jury could reasonably find for him. *See Anderson*, 477 U.S. at 252. As a result, Booth's motion for summary judgment must be granted.

## CONCLUSION

Accordingly, it is **ORDERED** as follows:

(1) Defendant Booth's Motion, R. 19, is **GRANTED**.

(2) The Section 1983 individual capacity claims against Booth are **DISMISSED WITH PREJUDICE**. Thus, Booth is **TERMINATED** as a party to this litigation.

This the 21st day of October, 2009.

Signed By:
*Amul R. Thapar* AT
United States District Judge